[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 08-15845
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
NOVEMBER 16, 2009
THOMAS K. KAHN
CLERK

D.C. Docket No. 04-03243-CV-CAP-1


COREY AIRPORT SERVICES, INC.,

Plaintiff-Appellee,

versus

BEN DECOSTA,
KYLE MASTIN,
CAROLYN CHAVIS,
HUBERT OWENS,
ADAM L. SMITH, in their individual capacities
as officers and employees of the City of Atlanta,

Defendants-Appellants.

_____

Appeals from the United States District Court
for the Northern District of Georgia
_____

(November 16, 2009)

Before EDMONDSON, BIRCH and COX, Circuit Judges.

PER CURIAM:

The City of Atlanta solicited bids for a contract to manage the advertising displays at Hartsfield-Jackson International Airport. Plaintiff Corey Airport Services, Inc. submitted a bid, but the City ultimately awarded the contract to the incumbent advertising contractor, Clear Channel Outdoor, Inc. Corey, a self-proclaimed political outsider, contends the bidding process was rigged. It sued the City and individual City employees pursuant to 42 U.S.C. § 1983, claiming they conspired to ensure Clear Channel, "a political elite," would be awarded the contract, even though acceptance of Corey's bid would have been in the best interest of the City. Corey asserts that this discriminatory "classification between political insiders and outsiders" denied it equal protection of the laws.

The individual defendants Ben Decosta, Kyle Mastin, Hubert Owens, Adam L. Smith, and Carolyn Chavis ("the Defendants") contend they are entitled to qualified immunity. They moved for summary judgment on this basis. The district court denied the Defendants' motion, and they appeal. We conclude that these Defendants did not violate a clearly established constitutional right and are therefore entitled to qualified immunity.

## I. BACKGROUND

We basically accept the facts as stated in the district court's order denying summary judgment to the City employees. *See Cottrell v. Caldwell*, 85 F.3d 1480,

1486 (11th Cir. 1996) ("In exercising our interlocutory review jurisdiction in qualified immunity cases . . . we have discretion to accept the district court's findings, if they are adequate.") (citation omitted). We first review the factual background of the case and summarize general contentions of bias in the bidding process before proceeding to outline the evidence Corey offers to support its claims against these individual Defendants.

In 2002, the City of Atlanta issued a request for proposal for a five-year advertising contract at Hartsfield-Jackson International Airport. The successful proponent would have the right to manage and rent out over 300 advertising display locations throughout the airport. In exchange, it would pay a percentage of its monthly gross receipts to the City as a rental payment. The incumbent contractor, Clear Channel, continued to manage the airport advertising pending the award of a new contract.

The request for proposal required bid proponents to project their gross receipts for the five-year term and to commit to a monthly rent payment of at least sixty-percent of those receipts. The request also provided for a minimum annual guaranteed payment to the City if a contractor failed to attain projected revenues. Each month, the advertising contractor would pay the City the rent payment, or one-twelfth the minimum annual guaranteed payment, whichever was greater. The first

payment would be due thirty-one days after execution of the contract. According to Corey, if Clear Channel was awarded the new contract, it could continue to receive revenue from advertisements it had installed under its old contract for the first month of the new contract. Thus, Corey claims, the provision making the first rental payment due thirty-one days after execution of the contract offered Clear Channel a potential windfall equal to one month's advertising revenues, approximately $842,000. (R.34-591 at 69-70.) In contrast, a new advertising contractor would not likely generate any revenue during the first month of the contract because it could not obtain airport security clearance or approval for new advertisements prior to the due date for the first month's rent.[1] Therefore, Corey argues, the thirty-one day rent provision is evidence that bias in favor of Clear Channel was built into the request for proposal. (*Id.* at 71.)

Corey, Clear Channel, and one other proponent ultimately submitted bids for the advertising contract, which the City evaluated by awarding points based on various criteria, including projected fees, past performance, the proponent's financial

---

[1]The request for proposal stated that the new contract would require City approval of all advertising displays prior to their installation. The approval process would take approximately one month. Also, persons associated with the installation, maintenance and management of the advertising concession would be required to obtain airport security clearance. The City estimated it would take sixty days to process new clearance requests.

condition, and experience in airport advertising. Corey's proposal included an offer to pay the City a higher percentage of its gross receipts than did Clear Channel's proposal, but Clear Channel's proposal included higher overall revenue projections, due, in part, to an assumption the City would increase the number of advertising display locations. (R.34-591 at 15.) Ultimately, the City's proposal evaluation team awarded more points to Clear Channel's bid than to Corey's bid. The City selected Clear Channel as the winning bidder, and these parties met to negotiate final contract terms on November 14, 2002. Corey contends that, during these negotiations, the City amended its original request for proposal and allowed Clear Channel to revise its bid. Corey was not afforded the same opportunity.

In November 2002, Corey filed an administrative protest, challenging the City's selection of Clear Channel as the winning bidder. This protest was denied, but an appeal remains pending. The Atlanta City Council has postponed action to ratify the new contract pending the resolution of Corey's challenges to the bidding process.

Corey calls attention to various acts of each Defendant that it argues demonstrate that they conspired to manipulate the bidding process to favor Clear Channel. We now summarize the relevant contentions against each Defendant:

(1)  Ben Decosta

Decosta was the Airport's Aviation General Manager.  He chose the team that evaluated the proposals for the advertising contract and recommended that the City award the contract to Clear Channel.  According to Corey, Decosta had prior knowledge of the meeting between the City and Clear Channel in November 2002 to negotiate terms of the advertising contract and he did nothing to prevent its occurrence.[2]

(2) Kyle Mastin

Mastin was the Airport Concession Manager.  First, he drafted portions of the request for proposals, including the terms that Corey claims favored incumbent Clear Channel over other bid proponents.  Mastin refused Corey's request to modify or remove these provisions.  Second, Mastin was a member of the proposal evaluation team.  Corey presents evidence suggesting he manipulated the scoring of the proposals to favor Clear Channel.  Corey contends, for example, that Clear Channel's proposal included inflated revenue projections, that Mastin knew the projections were

---

[2]This conduct is summarized from Corey's Second Amended Complaint. (R.19-444 at 19.) In opposing summary judgment, Corey made allegations of discriminatory acts by Decosta dating from 2005-2007.  (R.27-500 at 8-16.)  The district court considered these acts in holding Decosta is not entitled to qualified immunity. (R.34-591 at 58-68.)  These allegations were not included in Corey's Second Amended Complaint and relate to facts occurring after Clear Channel was selected the winning bidder.  Because Corey cannot amend its Complaint by adding a new claim in its summary judgment papers, we will not discuss conduct beyond the scope of the Second Amended Complaint. *See Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004).

inflated, and that he used those projections in awarding extra points to the proposal. Finally, Mastin participated in the November 2002 meeting with Clear Channel representatives to negotiate the terms of the advertising contract. (R.34-591 at 68-74.)

(3) Hubert Owens

Owens was the Director of the City's Office of Contract Compliance. One criterium in the proposal evaluation rubric awarded points if the proponent partnered with a Disadvantaged Business Enterprise, certified by the Office of Contract Compliance. Both Corey and Clear channel proposed to partner with Disadvantaged Business Enterprises, Corey with Sydney Baxter & Co., and Clear Channel with Creative Media Displays of Georgia. The Office of Contract Compliance certified both as Disadvantaged Business Enterprises and awarded the same number of points to Corey's and Clear Channel's proposals. Corey presents evidence, however, that during the certification process Owens and his staff examined the application of Corey's partner more thoroughly than the application of Clear Channel's partner. Corey argues that if Owens and his staff had thoroughly examined the application of Clear Channel's partner, he would not have approved the Disadvantaged Business

7

Enterprise application, and Clear Channel's proposal would not have received as many points. (R.34-591 at 74-75.)

(4) Adam L. Smith

Smith was hired as Chief Procurement Officer for the City in January 2003, several months after the City selected Clear Channel as the winning bidder and after Smith's predecessor denied Corey's bid protest. Corey argues that Smith discriminated against Corey by neglecting to launch an independent investigation of Corey's bid protest. Also, Corey presents evidence that Smith knew there were irregularities with the 2002 request for proposal, but he declined to cancel the bid and issue a new request for proposal. (R.34-591 at 75-77.)

(5) Carolyn Chavis

Chavis was the City's Aviation Contract Administrator. She served as the contact person for bid proponents, receiving and answering questions about the bidding process. Corey submitted three sets of questions to Chavis. She answered the first two sets of questions, but not the third. In contrast, Chavis answered all of Clear Channel's questions. While Chavis claims the failure to answer the third set of questions was a simple mistake, Corey argues it was a discriminatory act. (R.34-591 at 77-79.)

8

## II. PROCEDURAL HISTORY

In 2004, Corey filed suit against the City, the individual Defendants identified above, and several other entities and individuals, seeking relief based upon multiple state and federal claims. The initial Complaint included 42 U.S.C. §1983 claims asserting equal protection violations and conspiracy to violate Corey's equal protection rights. The district court dismissed several of the claims, but denied several individual defendants' motions to dismiss the § 1983 claims based on qualified immunity. This court affirmed the denials, holding that the Complaint sufficiently alleged violations of Corey's equal protection rights. *Corey Airport Servs. v. City of Atlanta*, 181 F. App'x 908 (11th Cir. 2006).

Corey filed a Second Amended Complaint in 2007. Counts I and II retain the original equal protection and conspiracy claims. Count III seeks attorneys' fees pursuant to 42 U.S.C. §1988, Count IV asserts claims for Federal Restraint of Trade and Conspiracy to Monopolize, and Count V asserts a Monopolization claim.[3] The City and the individual City employee Defendants moved for summary judgment on the §1983 and §1988 claims, with the individual Defendants relying on the defense

---

[3]Counts IV and V included antitrust and related claims against Clear Channel and other defendants who were not City employees. In its order dated September 30, 2008, the district court granted these private defendants summary judgment on these claims. We do not consider Counts IV and V in this appeal.

of qualified immunity. In an order dated September 30, 2008, the district court denied the City's motion for summary judgment; the claims against the City remain pending and are not before us on appeal. The court also denied the individual Defendants' motions for summary judgment, holding they were not entitled to qualified immunity. The individual Defendants appeal.

## III. ISSUE ON APPEAL AND CONTENTIONS OF THE PARTIES

The issue on appeal is whether the Defendant City employees are entitled to qualified immunity for this alleged violation of the Equal Protection Clause of the Fourteenth Amendment.[4] The Defendants contend Corey has not presented evidence that they discriminated against it in violation of the Equal Protection Clause. The Defendants also argue that, even if the evidence supports a finding of a constitutional violation, they are nevertheless entitled to qualified immunity because they did not have fair and clear notice that their conduct violated a clearly established constitutional right.

Corey contends that it has presented sufficient evidence to show that each Defendant treated Corey and Clear Channel unequally while they were similarly

---

[4]Corey contends this court should refuse jurisdiction because the district court's ruling is heavily dependent on the resolution of existing factual disputes. The district court order, as it must on summary judgment, views the facts in the light most favorable to Corey. We find no basis for declining jurisdiction in this case.

situated, with the intent to discriminate against Corey. These acts, it argues, violated Corey's right to equal protection. Further, Corey contends that in 2002 the law was clearly established that unequal application of facially neutral laws between similarly situated persons violates the Constitution. Therefore, Corey argues, the Defendants are not entitled to qualified immunity.

## IV. STANDARD OF REVIEW

We review a district court's denial of summary judgment de novo, viewing all evidence and drawing all reasonable inferences in favor of the non-moving party. *Lee v. Ferraro*, 284 F.3d 1188, 1190 (11th Cir. 2002). Summary judgment is appropriately granted if there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. *Galvez v. Bruce*, 552 F.3d 1238, 1241 (11th Cir. 2008).

## V. DISCUSSION

Qualified immunity shelters government officials performing discretionary functions from "liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738 (1982) (citation omitted). The doctrine "balances two important interests—the need

11

to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. __, 129 S. Ct. 808, 815 (2009). "Qualified immunity is 'an immunity from suit rather than a mere defense to liability . . . .'" *Scott v. Harris*, 550 U.S. 372, 376 n.2, 127 S. Ct. 1769, 1773 n.2 (2007) (*quoting Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S. Ct. 2806, 2815 (1985) (emphasis omitted)).

The standard for qualified immunity is well established. First, the government official must show that he was engaged in a "discretionary function" when he committed the allegedly unlawful acts. *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1263-64 (11th Cir. 2004). If the official acted within his discretionary authority, "the burden shifts to the plaintiff to show that qualified immunity is not appropriate." *Lee*, 284 F.3d at 1194 (citation omitted). The plaintiff must satisfy the two-prong test prescribed by the Supreme Court in *Saucier v. Katz,* 533 U.S. 194, 121 S. Ct. 2151 (2001); he must show: (1) the defendant violated a constitutional right, and (2) this right was clearly established at the time of the violation. 533 U.S. at 201, 121 S. Ct. at 2156. By "clearly established" we mean "it would be clear to a reasonable [official] that his conduct was unlawful in the situation he confronted." *Id.* 533 U.S. at 202, 121 S. Ct. at 2156. "If the plaintiff prevails on both prongs of

this test, then the defendant is unable to obtain summary judgment on qualified immunity grounds." *Holloman*, 370 F.3d at 1264.

In performing the analysis, the district court first held that each of the Defendants acted within his or her discretionary authority in committing the acts of which Corey complains. (R.34-591 at 57.) Second, it considered whether the Defendants violated Corey's constitutional rights. The court found that Corey presented evidence that the general structure of the request for proposal and the overall selection process were "biased and manipulated by the City to the benefit of Clear Channel and to the detriment of any non-incumbent bid proponents." (*Id.* at 50.) It also found there are disputed issues of material fact as to whether "each individual defendant's conduct, as alleged, violated Corey's right to equal protection," (*id*. at 78-79), and whether each defendant acted with discriminatory intent. (*Id.* at 67, 74, 75, 77, 78.) Turning to the clearly established prong of the test, the district court did not cite any case law with facts similar to those in this case. Nevertheless, it held that "the individual City defendants had fair notice that their alleged conduct and treatment of Corey would be unconstitutional." (*Id.* at 82.) It explained, "[a]ny reasonable government official would know that he or she must

administer his or her duties in a fair-handed and equal manner with regard to similarly situated persons." (*Id.* at 81-82.) Therefore, the court held, the Defendants were not entitled to qualified immunity. (*Id.* at 82.)

The parties do not dispute that the Defendants acted within the scope of their discretionary authority. (Appellee's Br. at 29.) Thus, we consider only whether Corey has satisfied the two-prong test. *Saucier* mandated consideration of both prongs of the test; courts were instructed to first resolve whether the facts alleged showed a violation of a constitutional right. *Saucier*, 533 U.S. at 201, 121 S. Ct. at 2156. "If, and only if, the court [found] a violation of constitutional right . . . [would it] 'ask whether the right was clearly established . . . .'" *Scott*, 550 U.S. at 377, 127 S. Ct. at 1774 (*quoting Saucier*, 533 U.S. at 201, 121 S. Ct. at 2156). The Supreme Court recently changed course, however, and withdrew the requirement of adherence to the *Saucier* protocol. *Pearson*, 555 U.S. at ___, 129 S. Ct. at 818. It reasoned courts "should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id.* The Court explained that "[b]ecause the two-step *Saucier* procedure is often, but not always, advantageous, the judges of the district courts and the courts of appeals are in the best position to

determine the order of decisionmaking will best facilitate the fair and efficient disposition of each case." *Id.* at ___, 129 S. Ct. at 821.

In *Pearson,* the Court recognized that in some cases, "a court will rather quickly and easily decide that there was no violation of clearly established law before turning to the more difficult question whether the relevant facts make out a constitutional question at all." *Id.* at ___, 129 S. Ct. at 820. In these cases, courts may prefer to consider only the question of clearly established law and not to reach the constitutional question and risk "being insufficiently thoughtful and cautious in uttering pronouncements that play no role in their adjudication." *Id.* (quotation and citation omitted). Because we conclude examination of the clearly established law question will "best facilitate the fair and efficient disposition" of this case, we consider only this prong of the qualified immunity analysis. We do not reach the question whether Corey has presented sufficient evidence to show a constitutional violation.

Corey claims to be the victim of political discrimination. It presents evidence purporting to show that the individual Defendants conspired to apply facially neutral procurement laws and policies to favor political-insider Clear Channel to the detriment of and with the intent to discriminate against Corey, a political-outsider. To support its claim that insider-outsider discrimination violates a clearly established

15

constitutional right, Corey relies on three cases: *Snowden v. Hughes*, 321 U.S. 1, 64 S. Ct. 397 (1944); *Strickland v. Alderman*, 74 F.3d 260 (11th Cir. 1996); and *E&T Realty v. Strickland*, 830 F.2d 1107 (11th Cir. 1987).  These cases all note the general proposition that the Equal Protection Clause may be violated by an unequal application of a facially neutral statute.  *Snowden,* 321 U.S. at 8, 64 S. Ct. at 401; *Strickland*, 74 F.3d at 264; *E&T Realty*, 830 F.2d at 1112.  This broad statement, however,  was not made in the context of a decision holding that the Constitution had been violated.  In *Snowden*, the Supreme Court affirmed the dismissal of the plaintiff's case because he did not show he had been deprived of a constitutional right.  321 U.S. at 13, 64 S. Ct. at 403.  In *Strickland*, this court reversed a denial of the defendant's motion for judgment as a matter of law because the plaintiff's claims were not ripe.  74 F.3d at 266.  In *E&T Realty*, this court vacated a judgment for the plaintiffs on an equal protection claim because the district court applied an incorrect legal standard in finding the parties were similarly situated and because the district court made no finding of discriminatory intent.  830 F.2d at 1111, 1114.  Because the circumstances of this case differ from the circumstances of the cited cases and because the courts in the cited cases did not hold that the defendants violated the Constitution, we cannot conclude that these decisions made it clear that the conduct at issue here violated the Constitution.  Nor are we aware of any other relevant cases

16

decided prior to 2002 finding a violation of a constitutional right based on facts similar to those in this case.

Therefore, to hold that Defendants violated Corey's clearly established constitutional rights, we must conclude that a court's recitation of the highly general principle—that unequal application of facially neutral law with the intent to discriminate may violate the equal protection clause—in and of itself, offered the defendants "fair warning that their [treatment of Corey] was unconstitutional."[5] *Hope v. Pelzer*, 536 U.S. 730, 741, 122 S. Ct. 2508, 2516 (2002). Our precedents cannot support this conclusion. For general principles to clearly establish the law, the case must be an obvious one. *See Brosseau v. Haugen*, 543 U.S. 194, 199, 125 S. Ct. 596, 599 (2004). Because this is not such a case, the Defendants did not violate a clearly established constitutional right and are therefore entitled to qualified immunity.

Corey argues that even though there was no relevant case law in 2002 with facts similar to the facts of this case, "officials can still be on notice that their conduct

---

[5]Corey also points to a two step test in *Strickland* as offering the defendants "fair warning" that their conduct was unconstitutional:

> In order to prevail on an equal protection claim based upon the application of a facially neutral statute, it must be establish[ed] that: (1) the plaintiff was treated differently than similarly situated persons; and (2) the defendant unequally applied the facially neutral statute for the purpose of discriminating against the plaintiff.

*Strickland*, 74 F.3d at 264 (citation omitted). This test is also a general statement of law. It offers the defendants no better warning than does the Equal Protection Clause of the Fourteenth Amendment itself.

violates established law even in novel factual circumstances." *Hope,* 536 U.S. at 741, 122 S. Ct. at 2516. Corey asserts that certain authoritative judicial decisions "may establish broad principles of law that are clearly applicable in a variety of factual contexts going beyond the particular circumstances of the decision that establishes the principle." *Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1208-09 (11th Cir. 2007) (*citing Vinyard v. Wilson*, 311 F.3d 1340, 1351 (11th Cir. 2002)). These decisions "can control 'with obvious clarity' a wide variety of later factual circumstances." *Vinyard*, 311 F.3d at 1351. But, such decisions are rare. They arise where "precedents are hard to distinguish from later cases because so few facts are material to the broad legal principle . . . [that] factual differences are often immaterial to the later decisions." *Id.* Because "[w]e believe that most judicial precedents are tied to particularized facts," *id.,* broad principles of law are generally insufficient to clearly establish constitutional rights and "we must look to precedent that is factually similar to the case at hand." *See Williams v. Consol. City of Jacksonville*, 341 F.3d 1261, 1270 (11th Cir. 2003) (citation omitted).

Corey's claims of insider-outsider political discrimination present not only novel factual circumstances, but also a novel question of law. Corey cites no precedent holding that insider-outsider political discrimination violates the Constitution. Corey does not point to a single decision concerning political

18

discrimination, let alone one that could control, "with obvious clarity," these factual circumstances and offer the defendants "fair warning," that is, made it clear, that their acts violated the Constitution. The cases Corey relies on, *Snowden, Strickland,* and *E&T Realty,* did not hold that a particular act or course of conduct violated a constitutional right. They could not make it clear that manipulating a contract bidding process to favor an incumbent contractor was—in fact and in law—the kind of purposeful and unlawful discrimination that would violate the Equal Protection Clause of the Fourteenth Amendment.[6]

At oral argument, counsel for Corey stated that the bidding process was "so biased and slanted toward the incumbent Clear Channel that Corey advertising had little if any opportunity to meaningfully participate." Whether or not this be true, Corey is not entitled to relief from the individual Defendants pursuant to 42 U.S.C. § 1983. The Defendants did not violate a clearly established constitutional right and are therefore protected by qualified immunity from both the equal protection claim and the conspiracy claim. *See GJR Invs., Inc. v. County of Escambia, Fla.*, 132 F.3d

---

[6]In the qualified immunity analysis, we generally compare the acts of each defendant to analogous case law to determine whether each defendant has violated a clearly established constitutional right. Here, however, because we find there is no relevant case law supporting the Plaintiff's theory of recovery, we need not consider separately the allegations against each Defendant.

1359, 1370 (11th Cir. 1998) (noting plaintiff must demonstrate a denial of constitutional rights to sustain a conspiracy claim under § 1983).

## VI. CONCLUSION

For the reasons stated in this opinion, we reverse the district court's denial of the individual Defendants-Appellants' motions for summary judgment on qualified immunity grounds and remand to the district court with instructions to grant the Defendants summary judgment.

REVERSED AND REMANDED WITH INSTRUCTIONS.