**William J. HARRELL, Patricia Parker, and Karen Schamm, Plaintiffs–Appellees,**

**v.**

**UNITED STATES of America, LTJG Atkin, Defendants–Appellants.**

**Nos. 88–3494, 88–3606.**

United States Court of Appeals, Eleventh Circuit.

June 14, 1989.

Thomas J. Donlon, Trial Atty., Torts Branch, Civil Div., U.S. Dept. of Justice, Barbara L. Herwig, Dept. of Justice, Wendy Keats, Washington, D.C., for U.S.

Anthony J. LaSpada, Joseph A. Eustace, Jr., George P. Kickliter, Tampa, Fla., for plaintiffs-appellees.

Before HILL and EDMONDSON, Circuit Judges, and GARZA *, Senior Circuit Judge.

* Honorable Reynaldo G. Garza, Senior U.S. Circuit Judge for the Fifth Circuit, sitting by designation.

HILL, Circuit Judge:

## I. FACTS

The plaintiffs brought this suit against the United States and an individual Coast Guard officer, Lieutenant Junior Grade Thomas Atkin, for damages allegedly arising from the December 1985 arrest, search and detention of the plaintiffs for suspected drug violations on the high seas.

In December 1985, plaintiffs were sailing in the Bahamas aboard the vessel the Great Escape. On or about December 15, 1985, the vessel was boarded by a Jamaican Defense Force vessel and set free because no violations were found. On December 17, plaintiffs' vessel was stopped and boarded by officers of the United States Coast Guard cutter COURAGEOUS. No violations were found, and the vessel was given a complete clearance in writing.

The next day, December 18, plaintiffs' vessel was approached by the Naval warship EDWARD G. McDONNELL. Aboard the Naval vessel was a Coast Guard Tactical Law Enforcement Team (TACLET) under the command of Lt. Atkin. Plaintiffs invited the TACLET aboard. Plaintiffs then informed the TACLET that they had pulled some packages out of the water about 3:00 p.m. that day and had unsuccessfully attempted to radio the COURAGEOUS about them. The TACLET examined the packages which turned out to be ten bales of marijuana totalling 200 pounds. Plaintiffs were placed under arrest, read their rights, and subjected to a pat down search while still aboard their vessel. Two weapons, a rifle and a pistol, were also found aboard plaintiffs' vessel.

Plaintiffs were taken aboard the Naval warship, separated, and subjected to strip searches. The search of plaintiff Harrell, a male, was conducted in a closed helicopter hanger in the presence of a few other men. The search of the two women was conducted by Lt. Atkin in a closed bathroom in the presence of the senior medical corpsman because no female crew members were on board. After the searches were completed, all three plaintiffs were handcuffed to a chain connecting the bunk beds where they were placed.

The next day, December 19, plaintiffs were transferred to the COURAGEOUS. On December 20, the commanding officer of the COURAGEOUS released the plaintiffs and their vessel. No charges were ever filed against the plaintiffs with regard to the marijuana seizure.

The plaintiffs filed this action against the United States and Lt. Atkin after exhausting their administrative remedies. Plaintiffs sought damages against the United States under the Suits in Admiralty Act, 46 U.S.C.App. § 741 *et seq.*, the Public Vessels Act, 46 U.S.C.App. § 781 *et seq.*, and the Federal Tort Claims Act, 28 U.S.C. § 2674. They sought damages against Lt. Atkin personally for alleged constitutional torts and maritime torts.

Lt. Atkin moved to dismiss or in the alternative for summary judgment, alleging absolute and qualified immunity. By order dated February 25, 1988, the district court denied the motion on the basis that Lt. Atkin's actions were insufficiently discretionary to permit him to invoke either type of immunity.[1]

Lt. Atkin submitted a renewed motion for summary judgment, asserting that the district court lacked jurisdiction over the claims against him because a suit against the United States under the Suits in Admiralty Act is plaintiffs' exclusive remedy for the claims alleged and, in addition, urging the court to reconsider its denial of official immunity as a matter of law. By order dated April 25, 1988, the district court refused to reconsider the denial of immunity, but granted Lt. Atkin leave to refile the motion for summary judgment on the statutory exclusive remedy question.

Lt. Atkin filed a timely notice of appeal from the April 25 order and was granted an extension of time to file a notice of appeal from the February 25 order, which

---

1. However, the district court dismissed plaintiffs' first amendment claim on the basis that plaintiffs had failed to allege facts to support it.

he then timely filed. The district court then stayed consideration of the statutory exclusivity question pending resolution of the immunity issue on appeal. This court has now consolidated the appeals.

## II. DISCUSSION

The issues before us on appeal are (1) whether this court has subject matter jurisdiction over this appeal, and (2) whether the district court erred in denying Lt. Atkin's motion for summary judgment on the grounds of qualified immunity. We address each issue in turn.

### A. Subject Matter Jurisdiction

■ In his initial brief, Lt. Atkin states that this court has jurisdiction over his appeal under 28 U.S.C. § 1291. He cites *Mitchell v. Forsyth,* 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985) wherein the Supreme Court held that the denial of a claim of qualified immunity which turns on an issue of law is deemed a final decision of the district court immediately appealable under section 1291. In response, the plaintiffs attempt to distinguish this case from *Mitchell* by arguing that the district court's ruling turned on a question of fact instead of a question of law and by arguing that factual disputes concerning the parties' conduct remain. In reply, Lt. Atkin argues that the level of discretion necessary for the application of a particular immunity doctrine is manifestly a question of law for which immediate appeal is clearly available. We agree and find that we have subject matter jurisdiction to decide the appeal.

### B. Qualified Immunity

■ A government official performing a discretionary function is entitled to quali-

fied immunity from personal liability when the acts complained of violate no clearly established law of which a reasonable person should have been aware at the time he acted. *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Lt. Atkin argues that the actions alleged in this case—the arrest, search and detention of the plaintiffs—are typical actions and decisions taken by a law enforcement officer in the performance of his duties. Moreover, appellant argues that his actions were within the limits of clearly established law, thus entitling him to immunity with respect to the constitutional torts.[2]

Lt. Atkin cites numerous cases from the Supreme Court and this circuit which have held that the ordinary functions of law enforcement officers, such as are involved here, are sufficiently discretionary as to entitle them to qualified immunity under *Harlow,* without the need to analyze the level of discretion involved. We find that Lt. Atkin's actions in arresting, searching and detaining the plaintiffs were sufficiently discretionary as to entitle him to qualified immunity for the alleged constitutional torts, provided that these actions violated no clearly established law of which a reasonable person should have been aware at the time he acted. We note that the question we address is whether a reasonable Coast Guard officer in the same circumstances as Harrell and knowing what Harrell knew could have concluded that his actions did not violate any clearly established statutory or constitutional rights of the plaintiffs. *Parker v. Williams,* 862 F.2d 1471, 1476 (11th Cir.1989); *see Anderson v. Creighton,* 483 U.S. 635, 107 S.Ct. 3034, 3040, 97 L.Ed.2d 523 (1987). We find that a reasonable officer could have so concluded.

■ With respect to the stop of the vessel, this court has held that the Coast

**2.** Lt. Atkin also argues that he is entitled to qualified immunity for the non-constitutional maritime torts but that this issue has no continuing importance in this litigation for two reasons. First, the Suits in Admiralty Act is plaintiffs' exclusive remedy. We note that the district court has stayed the consideration of the statutory exclusivity question pending resolution of the immunity issue on appeal. Second, the Federal Employees Liability Reform and

Tort Compensation Act of 1988, Pub.L. No. 100–694 (to be codified at 28 U.S.C. § 2679) requires substitution of the United States as the exclusive defendant for common law tort suits against federal officials acting within the scope of their employment. In view of our resolution of the immunity issue, we need not address the question of substitution. We will address the applicability of qualified immunity to the non-constitutional torts later in the opinion.

Guard has the power to stop and board an American flag vessel anywhere on the high seas, even in the absence of any particularized suspicion of criminal activity. *United States v. Purvis*, 768 F.2d 1237, 1238 (11th Cir.1985), *cert. denied*, 475 U.S. 1011, 106 S.Ct. 1186, 89 L.Ed.2d 302 (1986). Once the TACLET boarded plaintiffs' vessel, they found plaintiffs in possession of 200 pounds of marijuana. Assuming plaintiffs version of the facts is true, that they did find the marijuana floating in the water and attempted to contact Coast Guard authorities, there is no evidence that Lt. Atkin knew any of this at the time he acted. We find that plaintiffs' possession of the marijuana provided sufficient probable cause to arrest, without requiring Lt. Atkin to investigate further to determine actual criminal intent. *See United States v. Everett*, 719 F.2d 1119 (11th Cir.1983), *cert. denied*, 465 U.S. 1037, 104 S.Ct. 1311, 79 L.Ed.2d 709 (1984) (intent not necessary to establish probable cause to arrest; passing of counterfeit note itself provides sufficient probable cause to arrest); see also 21 U.S.C. § 955 (it is unlawful to possess a controlled substance aboard any vessel entering or departing the United States or the customs territory of the United States).

With respect to the strip searches, Lt. Atkin argues that he conducted the searches pursuant to written Coast Guard policy. The admiral commanding the Coast Guard district to which Lt. Atkin was assigned had issued a written directive stating that "where it is anticipated that prisoners will remain on board for longer than 24 hours or overnight, strip searches shall normally be conducted, since past experiences under these circumstances establish reasonable suspicion that weapons or contraband may be secreted on arrestees." Plaintiffs were found in possession of 200 pounds of marijuana as well as a rifle and a pistol. They were to be held in custody aboard a Naval warship. We do not find that Lt. Atkin acted unreasonably in conducting the strip searches of the plaintiffs.

With respect to the reasonableness of plaintiffs' detention, we find that plaintiffs' overnight detention aboard the McDONNELL, for a period not more than 14 hours, was not clearly unlawful under the established law of this circuit. *Purvis*, 768 F.2d at 1238–39 (detention of suspected drug traffickers in handcuffs and confinement aboard Coast Guard vessel performing routine patrols for four days before landing to seek a magistrate for arraignment was not unlawful).

Lt. Atkin appears not to have violated the constitution at all; but, if he did, we have no reluctance to say that a reasonable officer in Lt. Atkin's position would have believed his actions were lawful. This is sufficient for immunity, and we find Lt. Atkin entitled to qualified immunity as to the constitutional torts.

The same considerations which apply to the constitutional claims demonstrate Lt. Atkin's entitlement to qualified immunity for the alleged non-constitutional maritime torts.

### III. CONCLUSION

For the reasons stated above, we REVERSE the order of the district court and REMAND with instructions to dismiss the claims against Lt. Atkin on the grounds of qualified immunity.

REVERSE and REMAND.